UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBANE FEDERAL,<br>    Plaintiff,<br>    v.<br>UNITED INFRASTRUCTURE PROJECTS FZCO, et al.,<br>    Defendants. | Case No. 14-cv-03254-VC<br><br>**ORDER GRANTING ANTI-SUIT INJUNCTION**<br>Docket No. 22 |

## I. INTRODUCTION

This case stems from a dispute between Gilbane Federal, formerly known as ITSI Gilbane Company ("Gilbane"), a United States company, and United Infrastructure Projects FZCO ("UIP FZCO"), a foreign corporation with a principal place of business in Dubai, United Arab Emirates. Gilbane is the prime contractor on a construction contract for a U.S. Naval base project in Djibouti, Africa. Several months after entering into its contract with the United States, Gilbane subcontracted with UIP FZCO, which then transferred its responsibilities under the subcontract to two other companies, UIP Lebanon and UIP Djibouti. In June 2014, Gilbane terminated the subcontract with UIP FZCO due to a contractual dispute, and, a few weeks later, sued UIP FZCO in the Northern District of California for breach of contract, express contractual indemnity, and declaratory relief. A few days later, UIP Lebanon sued Gilbane in a Lebanese court, UIP FZCO apparently also sued Gilbane in a Lebanese court, and UIP Djibouti has either sued or threatened to sue Gilbane in a Djiboutian court. Gilbane has now moved for an anti-suit injunction, asking this Court to enjoin UIP FZCO, UIP Lebanon and UIP Djibouti from pursuing the foreign

litigation, primarily on the ground that a forum selection clause in the subcontract between Gilbane and UIP FZCO mandates that all disputes arising out of the subcontract be litigated in a court of Gilbane's choice, which is the Northern District of California. Gilbane's motion for an anti-suit injunction is granted.

## II. BACKGROUND

In September 2013, Gilbane entered into a contract with the United States, with Gilbane agreeing to perform electrical and mechanical renovations at Camp Lemonnier, a U.S. Naval base located in Djibouti, Africa. On January 21, 2014, Gilbane entered into a subcontract with UIP FZCO, in which UIP FZCO took on essentially the entire scope of work under the contract. For purposes of the anti-suit injunction, there are three relevant sections of the subcontract, the most important of which is Section 13, which governs disputes between the parties and contains the forum selection clause. Section 13(B) reads as follows:

> As to any other unresolved dispute, controversy or Claim, ("Dispute") between the CONTRACTOR and Subcontractor, the parties shall first seek to resolve it through good faith negotiation involving senior management of the Parties. Thereafter, CONTRACTOR shall determine whether the Dispute shall be resolved by: 1) in accordance with the rules of the American Arbitration Association ("AAA") (including as an option the rules of the AAA's International Center for Dispute Resolution), before one or three arbitrators (chosen by the parties and the AAA in accord with AAA rules) in a given location, 2) by location specified by CONTRACTOR, or 3) through litigation in a United States or other court of competent jurisdiction of CONTRACTOR's choice, with or without a jury.

Hogue Decl. Ex. A at p. 50, § 13. Section 13(E) then stipulates that Gilbane provided consideration for the forum selection clause; it reads, "Subcontractor agrees that CONTRACTOR has provided material consideration for these Section 13 Formal Disputes terms and conditions, and that CONTRACTOR is particularly concerned as to the proper choice of forum." *Id.*

In addition to Section 13, Sections 17 and 14 of the Subcontract are also pertinent to this dispute. Section 17(B), entitled "Governing Law and Language," states, "The validity, interpretation and performance of this subcontract shall be governed and construed in accordance

with California law." Hogue Decl. Ex. A at p. 52, § 17. And Section 14 covers lower tier subcontracting, reading as follows:

> Neither the rights nor duties of this Subcontractor (nor the payments to become due hereunder) may be assigned or delegated without the written consent of the CONTRACTOR. Subcontractor shall not further subcontract the whole or any part of the Subcontract without prior written consent of the CONTRACTOR, which shall not be unreasonably withheld. When Subcontractor does subcontract any of the Work, or procure any materials or services for the Work, from others, Subcontractor shall incorporate all required FAR [Federal Acquisition Regulation] and other clauses in it subcontracts with such sub-subcontractors and vendors, and Subcontractor shall otherwise comply with all FAR and Prime Contract requirements as to such subcontracting.

Hogue Decl. Ex. A at 51, § 14.

Nonetheless, without Gilbane's consent and in contravention of this provision, on January 29, 2014, UIP FZCO entered into downstream purchase orders with UIP Lebanon and UIP Djibouti, two companies which appear to be closely intertwined with UIP FZCO, most particularly due to their common ownership. Mazin Sadiq, who owns 80 percent of UIP FZCO's stock, represented to Gilbane that he owns 51 percent of UIP Lebanon's stock, and that UIP Djibouti is "more or less for legal representation." Leineke Decl. Ex. A. In addition to their common ownership, the three companies appear to share assets and accounting practices.

In late June 2014, Gilbane terminated its Subcontract with UIP FZCO due to disputes over UIP FZCO's performance. Then, roughly one week later, Mazin Sadiq represented to Gilbane that UIP FZCO had therefore terminated its purchase orders with UIP Lebanon and UIP Djibouti. On July 18, 2014, Gilbane sued UIP FZCO for breach of contract, express contractual indemnity, and declaratory relief as to the propriety of the subcontract termination. That case – the specifics of which are not related to this anti-suit injunction – is currently pending before this Court.

Three days later, on July 21, 2014, UIP Lebanon filed suit against Gilbane in a Lebanese court seeking damages related to the termination of its subcontract with UIP FZCO. Further, it appears UIP FZCO has brought legal action against Gilbane in a Lebanese court, as Gilbane

obtained a copy of a Lebanese court order preventing Gilbane from drawing down on its letter of credit from the Bank of Beirut, which had secured UIP FZCO's performance obligations under its subcontract with Gilbane. In addition, over the last three months, Gilbane has received at least three emails from representatives of UIP Djibouti in which UIP Djibouti has threatened to sue Gilbane in a Djiboutian court. Based on an email exchange between Gilbane's attorney and UIP FZCO's U.S. counsel, it appears as if UIP FZCO, UIP Lebanon, and UIP Djibouti are willing to dismiss the foreign actions if Gilbane dismisses its suit against UIP FZCO before this Court. Merrell Decl. Ex. I.

Gilbane has now asked the Court to enjoin all three parties from pursuing any litigation against it in a foreign forum if that litigation arises out of disputes related to the project or to the subcontract between Gilbane and UIP FZCO, as all such disputes should be subject to the subcontract's forum selection clause. None of the defendants has responded to Gilbane's motion or appeared in this case.

### III. LEGAL STANDARD

While a district court may enjoin a party from pursuing litigation in a foreign forum, it should do so sparingly, and with great care to the principles of comity. The analysis for an anti-suit injunction is different from the analysis for a preliminary injunction generally, and it includes neither an assessment of the movant's likelihood of success on the merits nor a balancing of hardships. *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 990 (9th Cir. 2006). Rather, in determining whether to grant an anti-suit injunction, the Court considers three factors: (1) whether the parties and the issues are the same in the domestic and foreign actions, and whether the first action is dispositive of the action to be enjoined; (2) whether the foreign litigation would frustrate a policy of the domestic forum that issues the injunction; and (3) whether the effects on comity are tolerable. *See, e.g.*, *Gallo*, 446 F.3d at 991, 994; *Zynga, Inc. v. Vostu USA, Inc.*, 816 F.Supp.2d 824, 827 (N.D. Cal. 2011). If a district court grants an anti-suit injunction, "[t]he

4

injunction operates in personam: the American court enjoins the claimant, not the foreign court." *Gallo*, 446 F.3d at 989.

## IV. DISCUSSION

Gilbane has established that the three anti-suit injunction factors are met. Therefore, the Court grants the anti-suit injunction against the foreign parties.

### A. Whether the Parties and Issues are the Same

*1. Parties are the same*

The parties in the action before this Court and in the foreign actions at issue are not identical. Here, Gilbane originally sued UIP FZCO for breach of contract and other related claims, whereas in Lebanon at least one suit was brought by UIP Lebanon, and in Djibouti the suit is threatened by UIP Djibouti. But "[p]erfect identity of parties is not required for an anti-suit injunction." *Zynga*, 816 F.Supp.2d at 828. Rather, the parties are treated as the same if they are affiliated such that their interests can be represented by one another. *See, e.g.*, *Zynga*, 816 F.Supp.2d at 828; *Paramedics Electromedicina Commercial, Ltda v. GE Med. Sys. Info. Technologies, Inc.*, 369 F.3d 645, 652 (2nd Cir. 2004). Mazin Sadiq owns 80 percent of UIP FZCO and is the majority stockholder in UIP Lebanon, and he represented that UIP Djibouti exists primarily to allow UIP FZCO to do business in Djibouti. Further, the companies share business practices and assets in a way that suggests a close affiliation. And in this case their interests are practically identical and are well represented by each other. All three companies oppose Gilbane for disputes arising out of the project and the subcontract, and, as evidenced by the email exchange between Gilbane's counsel and UIP FZCO's U.S. counsel, all three UIP companies are willing to drop their foreign litigation if Gilbane will dismiss its suit against UIP FZCO. Accordingly, for purposes of an anti-suit injunction, the parties are the same.

*2. Issues are the same*

The second prong focuses on whether the issues in the domestic and foreign actions are the

same. Much like the inquiry concerning the relatedness of the parties, the test is not whether the issues are identical, but whether they are functionally the same, meaning that one action would be dispositive of the other. *Applied Medical Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909, 915 (9th Cir. 2009). The Court does not have knowledge of the specifics of each of the foreign actions, so it cannot state with certainty that the issues in the foreign actions are functionally the same as the issues in the case before this Court. But to the extent that the foreign litigation is related to any disputes connected to the project, or to any issues addressed by the subcontract, the outcome of Gilbane's suit before this Court will be dispositive of any actions in Lebanon or Djibouti. The "crux of the functional inquiry…is to determine whether the issues are the same in the sense that all the issues in the foreign action fall under the forum selection clause and can be resolved in the local action." *Applied Medical*, 587 F.3d at 915. Because it appears that the foreign actions are governed by the forum selection clause, the second prong of this first part of the anti-injunction test is met, as the issues are functionally the same.

### B. Whether the Foreign Litigation Frustrates Policy of Domestic Forum

The United States has a clear policy in favor of enforcing forum selection clauses, particularly in the context of international business transactions. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Here, by all indications the forum selection clause in the subcontract between Gilbane and UIP FZCO is enforceable, as the subcontract itself stated that Gilbane had provided material consideration for its inclusion and that Gilbane was particularly concerned about choice of forum. There is nothing to suggest that enforcement of the clause would be prejudicial to UIP FZCO.

The only question, therefore, is whether UIP Lebanon and UIP Djibouti are also subject to the forum selection clause. Had UIP FZCO followed the proper procedures when assigning work to downstream affiliates – i.e., had it sought and received Gilbane's consent, and incorporated all guidelines and clauses in the subcontract between UIP FZCO and Gilbane – then UIP Lebanon

6

and UIP Djibouti clearly would have been bound by the forum selection clause. However, since UIP FZCO unilaterally transferred its scope of work to UIP Lebanon and UIP Djibouti, and merely included a list of equipment and pricing in the downstream purchase order rather than any material terms of the subcontract, UIP Lebanon and UIP Djibouti did not technically agree to the terms of the subcontract. But they are nonetheless bound by the forum selection clause, because "when the alleged conduct of the non-parties to a contract is so closely related to the contractual relationship, the forum-selection clause applies to all defendants." *Adema Technologies Inc. v. Wacker Chemie AG*, 2014 WL 3615799 at \*6 (N.D. Cal. 2014). UIP Lebanon and UIP Dibouti were performing the work that Gilbane subcontracted with UIP FZCO to perform, and as discussed above the three companies share an identity of interests, so the terms of the subcontract apply to all parties. Otherwise, UIP FZCO's improper assignment would effectively nullify the forum selection clause as to UIP Lebanon and UIP Djibouti, which would clearly frustrate this forum's policy of enforcing forum selection clauses.

### C. Whether Effects on Comity are Tolerable

An anti-suit injunction should only be granted if its effects on international comity are tolerable. *Gallo*, 446 F.3d at 990, 994. Here, Gilbane and UIP FZCO – and, by extension, UIP Lebanon and UIP Djibouti – agreed to resolve any project disputes in a forum of Gilbane's choice, and they agreed that California law would govern. These are all private parties, the disputes do not concern public international issues, and there is no indication that the governments of Lebanon or Djibouti are involved in any way.[1] The anti-suit injunction is merely about giving effect to the substantive rights of a contract. Had the contract included a forum selection clause that all disputes should be decided in a foreign court under foreign law, this Court would refuse to hear the case on

---

[1] To the extent that any government is involved, it is the United States, as the foreign proceedings against Gilbane appear to be interfering with Gilbane's ability to meet its contractual obligations with the United States Navy.

7

the grounds of international comity. By the same principle, issuance of an anti-suit injunction actually advances, rather than offends, international comity. *See Gallo*, 446 F.3d at 994 (holding that to allow a party to circumvent a forum selection clause by filing suit in a foreign forum would not only "vitiate United States policy favoring the enforcement of forum selection clauses, but it could also have serious deleterious effects for international comity").

## V. CONCLUSION

Accordingly, because all three of the anti-suit injunction factors are met, Gilbane's motion for an anti-suit injunction is granted. Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Rule 65-1 of the Civil Local Rules, UIP FZCO, UIP Lebanon, and UIP Djibouti are enjoined as follows:

1) They shall not prosecute any further lawsuits or actions against Gilbane in Lebanon, or pursue or obtain any relief against Gilbane in Lebanese courts, to the extent any such lawsuit, action, or requested relief arises out of the project or subcontract, or both.

2) They shall not prosecute any further lawsuits or actions against Gilbane in Djibouti, or pursue or obtain any relief against Gilbane in Djiboutian courts, to the extent any such lawsuit, action, or requested relief arises out of the project or subcontract, or both.

3) They shall take any and all steps as necessary to cause the court in Lebanon and Djibouti to withdraw, dissolve, dismiss, and release any existing claims, lawsuits, injunctions, or orders that are adverse to Gilbane in Lebanon and Djibouti, to the extent any such claim, lawsuit, injunction, or order arises out of the project or subcontract, or both.

**IT IS SO ORDERED**.

Dated: September 24, 2014

_____
VINCE CHHABRIA
United States District Judge